1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Chadwick Burns,                          No. CV-19-00262-TUC-SHR (EJM)

10                    Petitioner,              **ORDER**

11   v.

12   Charles L Ryan, et al.,

13                    Respondents.

14

15          Petitioner Chadwick Burns filed a pro se Petition for a Writ of Habeas Corpus

16   ("PWHC") pursuant to 28 U.S.C. § 2254 on May 6, 2019. (Doc. 1).[1] Petitioner raises four

17   grounds for relief with several sub claims: (1)(a) the trial court failed to sua sponte give a

18   *Willits* instruction[2] where evidence had been lost or destroyed, and (1)(b) trial counsel was

19   ineffective for failing to request a *Willits* instruction, prejudicing Petitioner's ability to have

20   a fair trial in violation of the Sixth and Fourteenth Amendments; (2) the trial court erred

21   when it denied the defense motion to inspect the undercover vehicle, denying Petitioner his

22   constitutional rights to due process and confrontation; (3) trial counsel was ineffective for

23   failing to have an investigator inspect the angle of view one would have to the relevant

24   areas of the scene and the lighting of the motel parking lot, denying Petitioner a fair trial

25   _____

26   [1] Although the Petition was docketed by the Clerk on May 9, 2019, the Court assumes that Petitioner deposited his PWHC in the prison mailing system on May 6, 2019, as indicated by Petitioner's signature on his Petition. (Doc. 1 at 11). To give Petitioner the benefit of the earliest date calculations, the Court makes this same assumption for all other documents filed by Petitioner and included in the record for the present matter.

27

28   [2] *State v. Willits*, 96 Ariz. 184, 191 (1964) (holding that if the state fails to preserve evidence that is potentially exonerating, the accused may be entitled to an instruction informing the jury that it may draw an adverse inference from the state's action).

1   in violation of the Sixth and Fourteenth Amendments; and (4) trial counsel was ineffective

2   for failing to interview Petitioner's co-defendant, Angela Parks, because her testimony

3   could have cleared Petitioner, violating Petitioner's right to effective assistance of counsel

4   under the Sixth and Fourteenth Amendments.

5        Respondents filed an Answer contending that some of Petitioner's claims are

6   unexhausted and procedurally defaulted, and that the remaining claims lack merit. (Doc.

7   11). Respondents request that the Court deny and dismiss the PWHC with prejudice.

8        Petitioner did not file a reply.

9        Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter

10  was referred to Magistrate Judge Markovich for a Report and Recommendation. The

11  undersigned finds that several of Petitioner's claims are procedurally defaulted and barred

12  from this Court's review, and that Petitioner does not demonstrate cause and prejudice or

13  a fundamental miscarriage of justice to excuse the procedural default of his claims. As to

14  Petitioner's claims that are cognizable, properly exhausted, and not defaulted, the

15  undersigned finds that Petitioner has failed to show that the state court's determination of

16  the claims was contrary to or based on an unreasonable application of clearly established

17  federal law, or based on an unreasonable interpretation of the facts. Accordingly, the

18  Magistrate Judge recommends that the District Court deny the Petition under 28 U.S.C. §

19  2254 for a Writ of Habeas Corpus.

20  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

21     **A.  Trial, Sentencing, and Appeal**

22       On June 3, 2015 a Pima County jury found Petitioner guilty of one count of sale of

23  a dangerous drug. (Doc. 11 Ex. D).[3] On July 13, 2015 Petitioner was sentenced to a

24  mitigated term of 10.5 years imprisonment. (Ex. E).

25       The Arizona Court of Appeals summarized the background of Petitioner's case as

26  follows:[4]

27  _____

    [3] All exhibit numbers refer to Respondent's Answer, Doc. 11, and all page numbers refer
    to the documents as filed in CM/ECF, unless otherwise noted.
28  [4] The appellate court's stated facts are entitled to the presumption of correctness. *See* 28
    U.S.C. § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012)

1

2            In June 2014, Tucson Police officers conducted a sting
         operation directed at street sales of narcotics. Officer Lorence
3        Jove, working undercover and driving an unmarked vehicle,
         made contact with Angelina Parks and, after she entered the
4        vehicle, Jove asked for "G," the street name for
         methamphetamine. Parks told Jove to drive to a nearby motel,
         where they parked in the front parking lot to the left of another
5        car.

6            Jove gave Parks $30 in marked currency, and Parks walked to
         the far end of the motel complex, where she entered one of the
7        rooms. Burns met Parks at the door, and after a few minutes,
         the two walked back toward Jove's vehicle. Although Parks
8        went directly to the front passenger window of Jove's vehicle,
         Burns walked to the back of the nearby car. Parks leaned in
9        through the window and informed Jove that the
         methamphetamine would cost $40. Meanwhile, Jove watched
10       Burns place the methamphetamine—wrapped into a small ball
         in "the corner of a shopping bag"—onto the trunk of the sedan.
11       Jove gave Parks a $20 bill, explaining it was all he had left.
         Parks then walked back to Burns, collected $10 for change as
12       well as the ball of methamphetamine, and returned to Jove to
         complete the transaction. Burns and Parks were arrested later
13       that night, and officers found one of the marked $20 bills in
         Burns's possession.

14   (Ex. A).

15          Following his conviction, Petitioner sought review in the Arizona COA. (Ex. F).

16   Appointed counsel filed a brief arguing that the trial court erred in denying the *Batson*

17   challenge because the State failed to give a legitimate race neutral reason to strike the only

18   African American on the panel. (Ex. G). Counsel later filed a supplemental brief presenting

19   a second issue for review, arguing that the trial court erred when it denied Petitioner's

20   motion to inspect the undercover vehicle. (Ex. H). On October 4, 2016 the COA issued its

21   decision affirming Petitioner's conviction and sentence. (Ex. A). The court addressed each

22   of Petitioner's claims in detail but found no error. *Id.*

23          On October 31, 2016 Petitioner's counsel filed a petition for review in the Arizona

24   Supreme Court (Ex. K), which the court denied on March 15, 2017 (Ex. L). On June 7,

25   2017 the COA issued its mandate. (Ex. M).

26   . . .

27   _____

28   (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should
     not be afforded the presumption of correctness).

1

**B. Petition for Post-Conviction Relief**

2   On January 6, 2017 Petitioner initiated proceedings in Pima County Superior Court

3   for Rule 32 post-conviction relief ("PCR").[5] (Ex. N).[6] Appointed counsel filed a petition

4   alleging that trial counsel was ineffective for: (1) failing to enlist a defense investigator to

5   travel to the scene to inspect the angle of view from the undercover car to the relevant areas

6   around the motel; (2) not filing a more detailed and specific second motion to inspect the

7   undercover vehicle; (3) not bringing to the court's attention that the photographs disclosed

8   by the State utilized enhanced lighting and therefore did not adequately represent the

9   officer's viewpoint; (4) failing to interview Ms. Parks or call her as a witness; (5) failing

10  to argue at the evidentiary hearing that the undercover car's description and license plate

11  had already been disclosed by the defense, mooting the State's interest in maintaining the

12  anonymity of the car; (6) failing to consult with Petitioner between the first and second

13  trials; (7) failing to provide Petitioner with a copy of the witness audio recordings; (8)

14  failing to properly flesh out the issue of the police buy money not being photographed or

15  placed into evidence; (9) failing to request a *Willits* instruction for the State's failure to

16  preserve the evidence; and (10) failing to respond to Petitioner's request to obtain the police

17  radio logs. (Ex. U at 7–10). The petition also alleged that appellate counsel was ineffective

18  for arguing very specific issues that did not include due process or fair trial claims. *Id.* at

19  10.

20  On December 11, 2017 the court issued its order summarily dismissing the petition

21  pursuant to Rule 32.6(c). (Ex. X). In a detailed opinion, the court first set forth the factual

22  ---
[5] The Arizona Rules of Criminal Procedure were amended effective January 20, 2020. New

23  Rule 32 applies to defendants convicted after a trial or a contested probation violation
    hearing, and new Rule 33 applies to pleading defendants and defendants who admitted a

24  probation violation or had an automatic probation violation. Because Petitioner's state
    court actions were filed prior to January 20, 2020 and he had no state court action pending

25  at the time the new rules went into effect, former Rule 32 applies to Petitioner's case and
    the Court will cite to former Rule 32 throughout this opinion. *See* Arizona Supreme Court

26  Order R-19-0012, available at:
    https://www.azcourts.gov/rules/Recent-Amendments/Rules-of-Criminal-Procedure

27  [6] Petitioner filed two notices of PCR that were summarily dismissed by the trial court as
    untimely. (Exs. N, O, P, and Q). After Petitioner filed a motion for reconsideration (Ex. R),

28  the court determined that it had denied the PCR notices in error and ordered that its prior
    orders finding the notices untimely be vacated (Ex. T). The court issued a corrected notice
    to initiate Rule 32 proceedings and appointed counsel to represent Petitioner. *Id.*

and procedural history of Petitioner's case, then turned to Petitioner's claims for relief arguing ineffective assistance of trial and appellate counsel. *Id.* The court first rejected Petitioner's claim that counsel should have used an investigator to inspect the angle of view, stating that Petitioner failed to provide details as to which areas should have been examined, how the officer's description was inaccurate, or how an inspection could have been probative. *Id.* at 40. The court noted that counsel did an extensive cross-examination using photographs illustrating the varying lighting and audio from the body bug recording, and that counsel sent an expert to prepare a diagram of the scene that was used to refute the officer's testimony about what he could see. *Id.* at 40–41. As to the claim that counsel was ineffective for failing to file a more detailed motion to inspect the undercover vehicle, the court noted that counsel obtained photographs from various vantage points in the vehicle, measured the tint, and retained an expert who provided testimony about the car. *Id.* at 41. Petitioner failed to state what should have been included in the motion, what access to the car would have provided that the photographs and testimony did not, or how an inspection would have informed counsel's exhaustive cross-examination of the officer. As to the claim that counsel was ineffective for failing to argue at the evidentiary hearing that enhanced lighting was used to take photos of the undercover vehicle, the court stated that counsel did argue this point and the trial court commented that all parties were in agreement that a camera was not going to capture what the human eye can see. The trial court allowed the defense to request additional photos from the State. *Id.* at 42. As to the claim that counsel failed to interview or call Ms. Parks as a witness, Ms. Parks had her own case pending at the time, and Petitioner failed to provide an affidavit or other support showing that she would testify and what her testimony would have been. As to the claim that counsel should have consulted with Petitioner between the first and second trials, Petitioner failed to indicate why this should have happened and how he was prejudiced by it. As to the claims that counsel should have provided Petitioner with a CD of the witness audio recordings and requested the radio logs, a transcript of the body bug recording was used at trial and Petitioner failed to allege what in the recordings or radio logs would have

changed the outcome of his case. As to the claims that counsel should have fleshed out the issue of the buy money and requested a *Willits* instruction, it is clear that the evidence was preserved and admitted at trial and therefore there was nothing for counsel to flesh out and nothing that would have allowed counsel to request a *Willits* instruction. *Id.* at 42–43. Finally, as to the claim that appellate counsel was ineffective for arguing very specific issues that did not include due process or fair trial claims, Petitioner's conclusory allegations failed to articulate any due process or fair trial arguments that were available that appellate counsel failed to make. *Id.* at 43.

For each claim, the court found that Petitioner failed to show that counsel's performance fell below an objective standard of reasonableness or how Petitioner was prejudiced. The court concluded that Petitioner failed to present any material issue of fact or law that would entitle him to an evidentiary hearing and had failed to state a colorable claim for relief on any basis and ordered the petition summarily denied pursuant to Ariz. R. Crim. P. 32.6(c). *Id.* at 44.

On December 27, 2017 Petitioner filed a petition for review in the Arizona COA. (Ex. Y). Petitioner presented six issues of ineffective assistance of counsel for review: (1) counsel's failure to have an investigator inspect the angle of view one would have while sitting inside an undercover car and assess the motel lighting; (2) counsel's failure to file a more detailed motion to inspect the undercover vehicle and raise the fact that the State's claim of wanting to preserve the car's anonymity was false; (3) counsel's failure to consult with Petitioner between the first and second trials; (4) counsel's failure to flush out the issue of lost or destroyed evidence and failure to request a *Willits* instruction; (5) appellate counsel's failure to raise Petitioner's constitutional rights to due process, confrontation, and a fair trial; and (6) whether Petitioner proved that there was a reasonable probability that the results of the trial would have been different had he had effective assistance of counsel. *Id.* at 49–51.

On May 7, 2018 the COA issued its decision granting review and denying relief. (Ex. Z). The court stated that it had "reviewed the record and the trial court's ruling and

conclude it correctly rejected [Petitioner's] claims in its thorough and well-reasoned minute entry, which we accordingly adopt." *Id.* at 85.

Petitioner did not file a motion for reconsideration or a petition for review to the Arizona Supreme Court. On September 5, 2018 the COA issued its mandate. (Ex. AA).

## C. Habeas Petition

On September 5, 2019 Petitioner filed his PWHC in this Court. (Doc. 1). Petitioner alleges four grounds for relief with several sub claims. The undersigned address each of these claims below. For the reasons that follow, the undersigned finds that some of Petitioner's claims are unexhausted and procedurally defaulted, and that Petitioner has failed to show cause and prejudice or a fundamental miscarriage of justice to excuse the default of his claims. The undersigned finds that Petitioner's remaining claims lack merit and that Petitioner has failed to show that the state court's resolution of his ineffective assistance of counsel ("IAC") claims was an objectively unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, the undersigned recommends that the District Court enter an Order denying the PWHC.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the federal court's power to grant a petition for a writ of habeas corpus on behalf of a state prisoner. First, the federal court may only consider petitions alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Sections 2254(b) and (c) provide that the federal courts may not grant habeas corpus relief, with some exceptions, unless the petitioner exhausted state remedies. Additionally, if the petition includes a claim that was adjudicated on the merits in state court proceedings, federal court review is limited by § 2254(d).

## A. Exhaustion

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust state remedies, a petitioner must afford the state courts

the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary opportunity, the prisoner must fairly present her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the highest court requirement is satisfied if the petitioner has presented his federal claim to the Arizona COA, either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931–33 (D. Ariz. 2007).

A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended and superseded*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

However, "[a] habeas petitioner who [fails to properly exhaust] his federal claims in state court meets the technical requirements for exhaustion" if there are no state remedies still available to the petitioner. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "This is often referred to as 'technical' exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy." *Thomas v. Schriro*, 2009 WL 775417, at *4 (D. Ariz. March 23, 2009). "If no state remedies are currently available, a claim is technically exhausted," but, as discussed below, the claim is procedurally defaulted and is only subject to federal habeas review in a narrow set of

circumstances. *Garcia v. Ryan*, 2013 WL 4714370, at *8 (D. Ariz. Aug. 29, 2013).

## B. Procedural Default

If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims).

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (internal quotations and citation omitted); *Martinez v. Ryan*, 566 U.S. 1, 10 (2012) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."). Cause requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Impediments to compliance may include interference by officials that makes compliance with the state's procedural rule

impracticable, a showing that the factual or legal basis for the claim was not reasonably available, or the procedural default was the result of ineffective assistance of counsel. *Id.* at 488–89. Prejudice requires "showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). The Court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991).

Additionally, a habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see also Murray*, 477 U.S. at 496; *Cook*, 538 F.3d at 1028.

**C. Adjudication on the Merits and § 2254(d)**

The Ninth Circuit has held that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

If a habeas petition includes a claim that was properly exhausted, has not been procedurally defaulted, and was adjudicated on the merits in state court proceedings, federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision was contrary to federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, 565 U.S. 34, 38 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was

based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86 (2011). This standard is "difficult to meet." *Richter*, 562 U.S. at 102. It is also a "highly deferential standard for evaluating state court rulings . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

## III.    ANALYSIS[7]

### A. Unexhausted and Procedurally Defaulted Claims

#### i.    Ground One (a)

In his Ground One (a) claim, Petitioner alleges that the trial judge erred by failing to sua sponte give a *Willits* instruction where there was evidence that was lost or destroyed, prejudicing Petitioner's ability to have a fair trial and violating the Sixth and Fourteenth Amendments. Petitioner specifically contends that the two marked $5 bills used as buy money, which Petitioner allegedly gave back to Ms. Parks to give to Officer Jove as change, were not present at trial or admitted into evidence. However, a photocopy of the bills was admitted at trial.

In Arizona, exhaustion is satisfied if a petitioner presents the federal basis of his claim to the COA through either the direct appeal process or PCR proceedings. Here,

---

[7] As a threshold matter, the Court must consider whether a PWHC is barred by the statute of limitations. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). AEDPA imposes a one-year statute of limitations for state prisoners filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). Here, Respondents do not dispute that the PWHC was timely filed. The undersigned finds that the PWHC was timely filed within one year from the date that the Arizona COA issued its mandate on the PCR proceedings—the mandate issued on September 5, 2018 and Petitioner timely filed his PWHC on May 6, 2019. *See Wells v. Ryan*, 2015 WL 9918159, at *8–*9 (D. Ariz. Aug. 13, 2015) ("[W]hen the Arizona Court of Appeals grants review of the trial court's decision on a petition for post-conviction relief but denies relief, and the petitioner does not seek further review, the post-conviction proceeding is pending until the date the appellate court issues its mandate.") (collecting cases and citing Ariz. R. Crim. P. 31.23 and 32.9(g)), *report and recommendation adopted by* 2016 WL 319529 (D. Ariz. Jan. 27, 2016); *Ramon v. Ryan*, 2010 WL 3564819, *6 (D. Ariz. July 23, 2010) (same); *see also Dixon v. Ryan*, 2018 WL 3215655, at *2–*3 (D. Ariz. Apr. 2, 2018) (citing *Wells* and finding that the statute of limitations did not begin to run until the COA issued its mandate, and rejecting respondents' argument that the statute of limitations began to run on the day that the time for petitioner to seek review in the Arizona Supreme Court expired), *report and recommendation adopted by* 2018 WL 3209417 (D. Ariz. June 29, 2018).

Petitioner did not raise this claim on direct appeal or during his PCR proceedings. While Petitioner raised a related claim that trial counsel was ineffective for failing to request a *Willits* instruction, that is insufficient to exhaust the separate and distinct claim that Petitioner now raises on habeas. *See Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007) ("in order to fulfill exhaustion requirements, a petitioner must present to the state courts the substantial equivalent of the claim presented in federal court"); *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (a petitioner fairly presents his claim in state court only if the state court claim described both the same set of operative facts and the applicable law). Accordingly, the claim that Petitioner's constitutional rights were violated because the trial court failed to sua sponte give a *Willits* instruction is unexhausted because Petitioner failed to properly present this claim to the state courts in a procedurally appropriate manner. *See Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2004) (To properly exhaust a claim, a petitioner must "give the Arizona courts a 'fair opportunity' to act on his federal [] claim before presenting it to the federal courts."); *Baldwin*, 541 U.S. at 29; *Crowell*, 483 F. Supp. 2d at 931–33.[8]

   ii. Ground Two

  In his Ground Two claim, Petitioner alleges that the trial court erred when it denied his motion to inspect the undercover vehicle, denying Petitioner's constitutional rights to due process and confrontation and a meaningful opportunity to present a complete defense.

  On direct appeal, Petitioner raised a similar issue in his supplemental brief, alleging that the trial court erred when it denied his motion to inspect the undercover vehicle because the court's decision was not based on the law and was not supported by any facts. (Ex. H). However, Petitioner did not argue the issue as a federal, constitutional claim, but rather as a state law claim of fundamental fairness, citing only to state case law and the

---

[8] The undersigned further notes that whether the trial court adequately instructed the jury on the applicable state law is not a question of federal law. *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("instructions that contain errors of state law may not form the basis for federal habeas relief"); *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding"); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983) ("Insofar as Gutierrez simply challenges the correctness of the state evidentiary rulings and the jury instructions, he has alleged no deprivation of federal rights.").

Arizona Rules of Evidence.[9]

To properly exhaust a claim, a petitioner must "give the Arizona courts a 'fair opportunity' to act on his federal [] claim before presenting it to the federal courts." *Castillo*, 399 F.3d at 998. "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996); *see also Grey v. Netherland*, 518 U.S. 152, 162–63 (1996) (a petitioner does not satisfy the exhaustion requirement "by presenting the state courts only with the facts necessary to state a claim for relief[;]" the specific constitutional right allegedly violated must also be identified); *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); *Lopez*, 491 F.3d at 1040 ("in order to fulfill exhaustion requirements, a petitioner must present to the state courts the substantial equivalent of the claim presented in federal court").[10] Nor can Petitioner transform his state law claims into

---

[9] In its decision, the COA noted that Petitioner did not argue any constitutional violation that resulted in fundamental, prejudicial error, and the court would not address it further. (Ex. A at 5 n.2).

[10] As this Court has explained:

> Fair presentation requires a petitioner to describe both the operative facts and the federal legal theory to the state courts. *Reese*, 541 U.S. at 28, 124 S. Ct. 1347. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Reese*, 541 U.S. at 28, 124 S. Ct. 1347 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir.2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial").

federal ones merely by asserting a violation of due process. *See* Rule 2(c), Rules Governing § 2254 cases; *Rivera v. Illinois*, 556 U.S. 148, 158 (2009); *Mayle v. Felix*, 545 U.S. 644, 646 (2005); *see also Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (a petitioner's conclusory suggestion that a constitutional right has been violated falls "far short of stating a valid claim of constitutional violation" sufficient to provide a basis for habeas relief).

Accordingly, the undersigned finds that Petitioner's claim in Ground Two is unexhausted because he failed to properly present it to the state courts in a procedurally appropriate manner. *See Baldwin*, 541 U.S. at 29; *Castillo*, 399 F.3d at 998; *Crowell*, 483 F. Supp. 2d at 931–33.

iii.    Ground Four

In his Ground Four claim, Petitioner alleges trial counsel was ineffective for failing to interview Petitioner's co-defendant, Ms. Parks, because her testimony could have cleared Petitioner. Petitioner alleges this violated his right to effective assistance of counsel under the Sixth and Fourteenth Amendments.

Petitioner raised this same claim to the trial court on PCR, alleging that trial counsel was ineffective for failing to interview Ms. Parks or call her as a witness. (Ex. U). However, Petitioner abandoned this claim in his petition for review to the COA. *See* Ex. Y at 49–51 (listing claims Petitioner presented for review). Nor did the COA address the claim in its decision. *See* Ex. Z at 2 (listing the IAC claims raised on PCR and stating that on review, Petitioner repeated "*several* of his claims of ineffective assistance of trial counsel") (emphasis added).

> Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162–63, 116 S. Ct. 2074, 135 L.Ed.2d 457 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27, 124 S. Ct. 1347.

*Date v. Schriro*, 619 F. Supp. 2d 736, 764–65 (D. Ariz. 2008).

Although the undersigned finds that Petitioner did properly present his Ground Four claim to the trial court on PCR, the claim is nevertheless unexhausted because Petitioner failed to present it to the COA in his petition for review. Exhaustion requires that a petitioner fairly present each claim to the state court in a procedurally appropriate manner. *Baldwin*, 541 U.S. at 29. "[A] petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the *entire direct appellate process* of the state, or (2) throughout one entire judicial post-conviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, Federal Habeas Corpus Practice and Procedure, § 23.3b (4th ed. 1998)). The COA is not required to address a claim that the petitioner fails to raise. *See* Ariz. R. Crim. P. 32.16(c)(4) ("A party's failure to raise any issue that could be raised in the petition for review . . . constitutes a waiver of appellate review of that issue.").

Accordingly, the claim that trial counsel was ineffective for failing to interview Ms. Parks is unexhausted because Petitioner failed to properly present it to the state courts in a procedurally appropriate manner. *See* Ariz. R. Crim. P. 32.16(c)(4); *Castillo*, 399 F.3d at 998; *Date*, 619 F. Supp. 2d at 786 (IAC claims unexhausted where petitioner raised claims in Rule 32 petition but failed to raise claims in petition for review to Arizona COA); *Crowell*, 483 F. Supp. 2d at 931–33.

## B.  Effect of Procedural Bar

Claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally

1   bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart v.*
2   *Smith*, 536 U.S. 856, 860 (2002); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998)
3   (Rule 32 is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050–52 (Ariz. 1996) (waiver
4   and preclusion rules strictly applied in post-conviction proceedings).

5       As explained above, several of Petitioner's claims are unexhausted because
6   Petitioner failed to properly present them to the state courts in a procedurally appropriate
7   manner. Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent
8   Petitioner from now exhausting those claims in state court. Accordingly, the claims are
9   both technically exhausted and procedurally defaulted and thus not properly before this
10  Court for review. *See Crowell*, 483 F. Supp. 2d at 931–33; *Coleman*, 501 U.S. at 732, 735
11  n.1; *Garcia*, 2013 WL 4714370 at * 8.

12      A federal court may not consider the merits of a procedurally defaulted claim unless
13  the petitioner can demonstrate cause for his noncompliance and actual prejudice, or
14  establish that a miscarriage of justice would result from the lack of review. *See Schlup v.*
15  *Delo*, 513 U.S. 298, 321 (1995). Both cause and prejudice must be shown to excuse a
16  procedural default, but the Court is not required to examine the existence of prejudice if
17  the petitioner fails to establish cause. *Engle*, 456 U.S. at 134 n.43; *Thomas*, 945 F.2d at
18  1123 n.10.

19      Here, Petitioner has failed to show cause for, or prejudice arising from, the
20  procedural default of his claims, and the Court can glean none from the record before it.
21  *See Martinez*, 566 U.S. at 10; *Murray*, 477 U.S. at 488. There was no objective factor
22  external to Petitioner's defense that impeded his efforts to comply with the state's
23  procedural rules; Petitioner simply failed to raise the specific claims he now attempts to
24  raise on habeas to the state courts in a timely and procedurally appropriate manner.
25  Petitioner does not allege any interference by officials that made compliance with the
26  state's procedural rules impracticable and has not shown that the factual or legal basis for
27  the claims was not reasonably available. *See Murray*, 477 U.S. at 488–489.

28      Further, Petitioner's status as an inmate and lack of legal knowledge do not

constitute cause. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996) (The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."); *see also Thomas*, 945 F.2d at 1123 (alleged inadequate prison library and legal assistance procedures did not establish cause where petitioner "failed to demonstrate that he, himself, had been denied access to the library" and petitioner's filing of pro se pleadings reflected adequate access to and use of legal materials); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause); *Hughes*, 800 F.2d at 908 (petitioner's pro se status and ignorance of the law do not satisfy the cause standard).

While the standard for cause and prejudice is one of discretion and is intended to be flexible, it must yield to exceptional circumstances only. *Hughes*, 800 F.2d at 909. Petitioner bears the responsibility for failing to raise his claims in a timely, properly filed state proceeding and properly exhausting those claims to the Arizona COA. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."). Accordingly, because Petitioner has failed to establish cause to excuse the procedural default of his claims, the Court need not examine the merits of Petitioner's defaulted claims or the purported prejudice.[11]

---

[11] Petitioner does not argue a fundamental miscarriage of justice to excuse the procedural default of his claims. A federal court may review the merits of a procedurally defaulted habeas claim if the petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup*, 513 U.S. at 327. A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* Actual innocence thus serves as a "gateway" for a petitioner to have procedurally or time-barred constitutional claims reviewed. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Smith v. Baldwin*, 510 F.3d 1127, 1139–49 (9th Cir. 2007) (en banc) (A claim of innocence under *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass

fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance. *Id*.

Even where trial counsel's performance is deficient, a petitioner must also establish prejudice in order to prevail on an IAC claim. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. "The likelihood of a different result must be substantial, not just conceivable." *Richter,* 562 U.S. at 112. Further, because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland*, 466 U.S. at 697–700; *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both deficiency and prejudice if the petitioner cannot establish one or the other).

Additionally, under the AEDPA, the federal court's review of the state court's decision on an IAC claim is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 698–699 (2002). This creates a "doubly deferential" review standard in which a habeas petitioner must show not only that there was a violation of *Strickland*, but also that the state court's resolution of the claim was more than wrong, it was an objectively unreasonable application of *Strickland*. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003); *Bell*, 535 U.S. at 698–99; *Woodford*, 537 U.S. at 25; *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential"). Thus, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 105.

ii.   Ground One (b)

In Ground One (b), Petitioner alleges that trial counsel was ineffective for failing to request a *Willits* instruction. Petitioner raised substantially the same claim in his Rule 32 petition (Ex. U) and his petition for review to the Arizona COA (Ex. Y) that he now alleges on habeas. Thus, the undersigned finds that Petitioner's Ground One (b) claim is properly exhausted.

In his petition for PCR, Petitioner alleged that no evidence was disclosed to the defense indicating that the two marked $5 bills were placed into evidence or photographed, and that trial counsel was ineffective for failing to request a *Willits* instruction for not preserving the bills. In denying PCR, the trial court summarized the background of this claim as follows:

> Officer Jove gave Ms. Parks one 20 dollar bill and two 5 dollar bills for a total of 30 dollars to buy meth. Ms. Parks left the car to purchase it and came back and told the officer that it would now cost 40 dollars. Officer Jove only had a 20 dollar bill remaining in buy money so he told her to get 10 dollars in change and he would then give her the second 20 dollar bill. Officer Jove then saw Ms. Parks walk to the Defendant and conduct an exchange. Ms. Parks returns and hands him two 5 dollar bills that are confirmed by TPD as the same bills Officer Jove handed out of the original 30 dollars.

(Ex. X at 42–43). The court explained that:

> It is clear from the trial transcripts that the police photo copied the buy money at issue to preserve exactly what money was being used that night. Trial transcripts reveal that Officer Jove got a total of 53 dollars in various denominations that night that was all photocopied before he left the station to begin the work. At trial, the State showed him State's Exhibit #53, which was the photocopy of the buy money that included the serial numbers of the two 5 dollars at issue. Once he got the two 5 dollar bills back from Ms. Parks, he compared the serial numbers on those 5 dollar bills to the photocopied 5 dollar bills and found each matched.

*Id.* at 43. The court concluded that "[c]learly this evidence was preserved [and] the photocopied buy money was admitted into evidence as State's exhibit #53." *Id.* Thus, "[t]here was nothing to flesh out and nothing that would have allowed trial counsel to request a *Willits* instruction." *Id.* The court further found that Petitioner failed to show how

trial counsel acted deficiently under prevailing professional norms.

In his petition for review to the COA, Petitioner alleged that trial counsel was ineffective for failing to flesh out the issue of lost or destroyed evidence and failing to request a *Willits* instruction. (Ex. Y). In denying relief, the COA found that Petitioner failed to show that the trial court abused its discretion in summarily denying the petition for PCR. (Ex. Z). The COA stated that it had "reviewed the record and the trial court's ruling and conclude it correctly rejected those claims in its thorough and well-reasoned minute entry, which we accordingly adopt." (Ex. Z).[12]

For purposes of federal habeas review, Petitioner bears the burden of showing that the state court, in ruling that counsel was not ineffective, applied *Strickland* in an objectively unreasonable manner. In making this determination, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105. Here, the undersigned finds that Petitioner has failed to meet his burden.

When reviewing a claim of IAC, this Court "begin[s] with the premise that under the circumstances, the challenged action [] might be considered sound trial strategy . . . [and w]e affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Elmore v. Sinclair*, 799 F.3d 1238, 1248–49 (9th Cir. 2015) (second and fifth alterations in original) (internal quotations and citations omitted). "As long as defense counsel uses a sound trial strategy, employing that strategy does not constitute deficient performance." *Elmore*, 799 F.3d at 1250 (internal quotations and citation omitted). "Counsel's decisions regarding jury instructions are fairly construed as a strategic decision." *Pinkoson v. Davenport*, 2009 WL 2219285, at *5 (D. Ariz. July 24,

---

[12] "AEDPA directs federal courts to train their attention on the particular reasons why each state court that considered a prisoner's claims denied relief. When more than one state court has adjudicated a claim, the federal court analyzes the last 'reasoned' state court decision." *Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016) (quoting *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005)). However, where "the last reasoned decision adopted or substantially incorporated the reasoning from a previous decision . . . it [is] reasonable for the reviewing court to look at both decisions to fully ascertain the reasoning of the last decision." *Barker*, 423 F.3d at 1093; *see also Robinson*, 360 F.3d at 1055 (in evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision).

1   2009) (citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002)).

2          Here, Petitioner contends that trial counsel should have requested a *Willits*
3   instruction because the marked $5 bills were allegedly lost or destroyed. It is clear from
4   the undersigned's review of the record that the buy money was photocopied, the photocopy
5   was placed into evidence, and the evidence was admitted at trial. Officer Jove's testimony
6   explains how the buy money was photocopied at the beginning of the operation and the
7   serial numbers on the bills were verified with the numbers on the photocopies. (Ex. BB at
8   90–91). After Officer Jove received the two $5 bills back from Ms. Parks, he compared the
9   bills to the photocopies and verified that they matched. *Id.* at 100. Officer Jove also testified
10  that after the police get the money back, the buy money goes back into the fund to be used
11  for other operations—thus explaining why the actual bills would not be admitted into
12  evidence at trial. *Id.* While Petitioner contends that not having the bills at trial or placed in
13  evidence denied him a fair trial, Petitioner fails to show that the state court's determination
14  of his IAC claim was objectively unreasonable. The PCR court reasoned that, because the
15  evidence was clearly preserved and admitted into evidence, there was nothing for trial
16  counsel to flesh out and no basis to request a *Willits* instruction. Thus, trial counsel could
17  not be ineffective for failing to request an instruction that neither the law nor the evidence
18  supported.

19         Further, regardless of whether trial counsel was deficient for failing to request a
20  *Willits* instruction, Petitioner has failed to establish prejudice. *See Butcher v. Marquez*, 758
21  F.2d 373, 377 (9th Cir. 1985) (where petitioner failed to prove that counsel erred in failing
22  to request an instruction "and that the error was one that a reasonably competent attorney
23  acting as a diligent conscientious advocate would not have made," court need not consider
24  prejudice); *see also Eppard v. Janda*, 2013 WL 1401216, at *11 (C.D. Cal. Mar. 4, 2013)
25  ("To prevail on a claim of ineffective assistance for failure to request an instruction, a
26  petitioner must establish that the failure to request the instruction fell below an objective
27  standard of reasonableness and that a reasonable probability exists that had the request been
28  made, it would have been granted and the result of the trial would have been different.").

Accordingly, the state court's finding that Petitioner's IAC claim was without merit is supported by the record before this Court and was not an objectively unreasonable application of *Strickland*. The undersigned therefore recommends that the District Court deny relief on Ground One (b).

    iii.    Ground Three

Petitioner alleges that trial counsel was ineffective when he failed to have an investigator inspect the angle of view one would have to relevant areas and the lighting of the motel parking lot. Petitioner raised substantially the same claim in his PCR petition (Ex. U) and his petition for review to the COA (Ex. Y). Thus, the undersigned finds that Petitioner's Ground Three claim is properly exhausted.

In his PCR petition, Petitioner argued that counsel was ineffective for failing to enlist a defense investigator to travel to the scene to inspect the angle of view from the undercover car to the relevant areas around the motel. Petitioner claimed that the viewpoint was not as open as Officer Jove testified, and that counsel's failure to pursue this prejudiced Petitioner's defense. In denying PCR on this claim, the trial court found that Petitioner failed to provide details as to which areas should have been examined, how the officer's description was inaccurate, or how an inspection could have been probative. (Ex. X at 40). The court explained that:

> Trial counsel did an extensive cross-examination using various photographs taken at the scene using the same undercover car parked in the same place at night, illustrating the varying lighting across the photos. In conjunction, trial counsel used audio from the "body bug" recording that was running contemporaneous with the drug transaction where, at times, Officer Jove would narrate what was happening. The cross focused on moments in which Jove was not able to see what was happening due to distance, lighting, or not being in position.

*Id.*; *see also id.* at 41. The court further found that Petitioner's claim was undermined by the fact that trial counsel did send an investigator to make a diagram of the scene showing how the undercover car and the Buick were positioned and the relative sizes of the cars, which was used to refute Officer Jove's testimony about what he could see from the

driver's seat of the undercover car relative to the Buick. *Id.* The court concluded that, "[o]ther than a conclusory statement that the failure to hire an investigator prejudiced him, there is nothing in the defendant's petition that articulates what would have been different had an investigator been retained[,]" and that Petitioner failed to show how counsel's performance fell below an objective standard of reasonableness or caused him prejudice. *Id.* at 41.

In his petition for review to the COA, Petitioner alleged that trial counsel was ineffective for failing to have an investigator inspect the angle of view one would have while sitting inside an undercover car and assess the motel lighting. (Ex. Y). In denying relief, the COA found that Petitioner failed to show that the trial court abused its discretion in summarily denying the petition for PCR. (Ex. Z). The COA stated that it had "reviewed the record and the trial court's ruling and conclude it correctly rejected those claims in its thorough and well-reasoned minute entry, which we accordingly adopt." (Ex. Z).[13]

For purposes of federal habeas review, Petitioner bears the burden of showing that the state court, in ruling that counsel was not ineffective, applied *Strickland* in an objectively unreasonable manner. Here, the undersigned finds that Petitioner has failed to meet his burden. While Petitioner contends that counsel should have sent an investigator because angle of view and lighting were the main focus of his trial, here, as on PCR, Petitioner fails to explain what areas should have been examined, how Officer Jove's testimony was inaccurate, or how an inspection would have been probative. As the PCR court noted, trial counsel conducted a thorough cross-examination of Officer Jove using photos of the area and the body bug recording, and retained an expert to create a diagram and give testimony on how the cars' sizes and positions could interfere with Officer Jove's ability to see. While Petitioner contends that the expert failed to do any type of investigation to prove Petitioner's innocence, this contention is belied by the record and trial counsel's use of the diagram and expert testimony to refute Officer Jove's testimony. Thus, while Petitioner may disagree with counsel's decision not to have the expert investigate the

---

[13] *See supra* n.12

viewpoint further, his general allegations of ineffective assistance fall far from the threshold required to show deficient performance under *Strickland*.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. As the Ninth Circuit has artfully explained: "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir.), *rev'd on other grounds*, 525 U.S. 141 (1998). That Petitioner disagrees with counsel's decision not to have an investigator inspect the angle of view does not make the decision wrong. . *See Gustave v. U.S.*, 627 F.2d 901, 904 (1980) ("Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation."). "Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill." *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("[no decision of the Supreme Court] suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.").

Accordingly, the state court's finding that Petitioner's IAC claim was without merit is supported by the record before this Court and was not an objectively unreasonable application of *Strickland*. The undersigned therefore recommends that the District Court deny relief on Ground Three.

iv.    Conclusion

In sum, Petitioner has not shown that the state court's rejection of his Ground One (b) and Ground Three claims was contrary to clearly established federal law, was based on an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings, and thus Petitioner is not entitled to federal habeas relief on these

claims. Accordingly, the state court's finding that Petitioner's IAC claims were without merit is supported by the record before this Court and was not an objectively unreasonable application of *Strickland*. The undersigned is mindful that the Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997); *see also Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("judges have no obligation to act as counsel or paralegal to pro se litigants"). The undersigned therefore recommends that the District Court deny relief on Ground One (b) and Ground Three.

## IV.   RECOMMENDATION

In conclusion, the Magistrate Judge **RECOMMENDS** that the District Court **DENY** Petitioner Chadwick Burn's Petition for Writ of Habeas Corpus. (Doc. 1).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States* v. *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 16th day of April, 2021.

Eric J. Markovich
United States Magistrate Judge